IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**FIRST TRINITY CAPITAL CORPORATION**                       **PLAINTIFF**

**V.**                                        **CIVIL ACTION NO. 2:12-CV-157-SA-SAA**

**CANAL INDEMNITY INSURANCE COMPANY**
**and CRUMP INSURANCE SERVICES, INC.**                              **DEFENDANTS**

## MEMORANDUM OPINION

This cause comes before the Court on Defendants' Motions for Summary Judgment [52, 54]. Upon due consideration of the motions, responses, rules, and authorities, the Court finds Defendants' motions are well taken and shall be GRANTED.

## FACTUAL AND PROCEDURAL BACKGROUND

This action was removed from the Circuit Court of Bolivar County, Mississippi on the basis of diversity jurisdiction. Plaintiff First Trinity Capital Corporation ("First Trinity") asserts multiple causes of action against Defendants Canal Indemnity Insurance Company ("Canal") and Crump Insurance Services, Inc. ("Crump") seeking the return of unearned premiums for two purported insurance policies allegedly financed by First Trinity, as well as interest, costs, and punitive damages.

First Trinity is involved in the business of insurance premium financing. A premium finance agreement is "an agreement by which an insured or prospective insured promises to pay to a premium finance company the amount advanced or to be advanced by an insurer or to an insurance agent or broker in payment of premiums of an insurance contract together with interest or discount and a service charge. . . ." Miss. Code Ann. § 81-21-1. The instant action arises from the financing of premiums for two insurance policies allegedly issued by Canal through Crump to CBR Transport, Inc. ("CBR").

First Trinity claims that Crump acted as the general agent for Canal and placed the policies through Central Mississippi Insurance Agency ("CMI"). First Trinity claims CMI was acting as the agent of Crump and Canal and initiated the transactions by sending First Trinity completed Premium Finance Agreements ("PFAs") on behalf of CBR. CMI allegedly sought financing for two policies that had purportedly been bound by Canal and Crump. First Trinity further claims CBR agreed in the PFAs to repay First Trinity the full amount financed and gave First Trinity the right to cancel the policies if CBR defaulted on its repayment, assigning to First Trinity its right to payment of any unearned premiums in connection with the policies in the event of cancellation. First Trinity claims it paid CMI $55,125.00 on February 9, 2009 to finance a commercial auto policy and $15,750.00 on May 27, 2009 to finance a business owner policy.

First Trinity claims it sent Crump a Notice of Premium Finance when it financed the policies, to which Crump allegedly did not respond. Further, when CBR failed to repay the loans, First Trinity claims it sent Canal and Crump Notices of Cancellation and again received no response. Defendants' motions make it clear that the subject transactions are one of many apparently fraudulent transactions consummated by CMI's owner, Jan Gunn, in an attempt to defraud numerous premium finance companies such as First Trinity. Crump and Canal claim the policies at issue were never issued, but were part of a scheme devised by Gunn to misappropriate monies from financed premiums. Crump and Canal further claim that CMI was not acting as their agent and that they never received any premiums. Seeking the return of unearned premiums from the policies, First Trinity filed the instant action, and Crump and Canal have each filed motions for summary judgment.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals both that there is no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when ... both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir.1997); Little, 37 F.3d at 1075.

**ANALYSIS AND DISCUSSION**

Though Canal and Crump each filed separate motions, both raise the same issues and arguments, and First Trinity has filed a single, consolidated memorandum in response. As such, the Court herein addresses both motions simultaneously.

*Policy Contingent Claims*

First, Defendants argue that First Trinity's claims for breach of statutory law, negligence per se, breach of contract, and any other claims seeking the return of unearned premiums must fail because there is no valid insurance policy or finance agreement. Under Mississippi law:

> [w]henever a financed insurance contract is cancelled, the insurer shall return to the premium finance company as soon as reasonably possible whatever gross unearned premiums are due under the insurance contract, and also shall furnish to the premium finance company a report setting forth an itemization of the unearned premiums under the policy that includes a detailed mathematical summary of the computation of the return premium.

Miss. Code. Ann. § 81-21-21.

First Trinity claims it paid CMI a total of $70,875.00 to finance two insurance policies on behalf of CBR. Whereas First Trinity asserts that "payment to the broker is payment to the insurer," Defendants contend there can be no premiums, earned or unearned, without a policy. Indeed, in a similar case involving both First Trinity and Crump, another district court sitting in Mississippi recently found that "in the absence of an insurance contract, there could be no unearned premiums; and in the absence of an insurance contract there could be no violation of § 81-21-21. . . ." First Trinity Capital Corp. v. Catlin Specialty Ins., 2013 WL 6230099, at *3 (S.D. Miss. Dec. 2, 2013) (citing Insurasource, Inc. v. Phoenix Ins. Co., 912 F. Supp. 2d 433, 439-440 (S.D. Miss. 2012). Defendants contend First Trinity has failed to prove the policies at issue existed, and therefore, they cannot be held liable for First Trinity's claims for breach of statutory law and negligence per se.

In response, First Trinity attempts to establish a genuine dispute of material fact through the affidavit of employee Clarence Zahn, wherein Zahn claims that he contacted Crump in order to obtain the policy numbers for the purported policies and was given two policy numbers. However, this testimony does not create a genuine issue of material fact as to the existence of the policies at issue. As was the case in Catlin, "First Trinity has produced no policy, no application for a policy and no evidence of underwriting for a policy." Id. This Court agrees with the finding in Catlin that "even assuming that an unidentified Crump representative provided information to Zahn or First Trinity, that does not prove that a policy, in fact, existed." Id. As such, First Trinity has failed to present sufficient evidence to create a triable issue as to whether the policies existed, and summary judgment is appropriate on its claims for breach of statutory law and negligence per se.

In pleading its breach of contract claim, First Trinity alleges that:

> [w]hen it financed CBR's premiums for the Policies, First Trinity stepped into the shoes of CBR for all payments and set-offs while leaving the insurer-insured relationship between Canal and CBR intact. First Trinity acquired, held and perfected a security interest in all unearned premiums in connection with the Policies when it funded the Policies on the aforesaid dates. Upon cancellation of the Policies, Canal and Crump owed First Trinity all unearned premiums in connection therewith in the amount of the unearned premium balance at the time of cancellation, plus interest and finance charges owed to First Trinity. . . . Canal and Crump breached their duties to return the aforesaid unearned premiums to First Trinity. Such failures constitute a breach of the contractual duties owed by Canal and Crump to First Trinity. . . .

Like its claims for breach of statutory law and negligence per se, this claim also hinges upon the existence of a valid insurance policy and premium financing agreement. See Catlin, 2013 WL 6230099, at*4 (citing Phoenix Ins. Co., 912 F. Supp. 2d at 440 (noting that an identical claim "requires the existence of a valid insurance policy, providing [the insured] with the right to unearned premiums upon policy cancellation, and a valid agreement between [the premium

finance company] and [the insured], allowing [the finance company] to recover any unearned premiums in place of [the insured]"). Given the Court's determination that no genuine dispute of material fact exists as to the presence of the policies at issue, Defendants are likewise entitled to summary judgment on this claim.

*Actual Authority*

Second, Defendants argue that all other claims asserted by First Trinity must fail because Gunn/CMI was not their agent. Defendants further contend that Gunn/CMI had neither actual nor apparent authority to act on their behalf and that they cannot, therefore, be liable for the actions of Gunn/CMI. In response, First Trinity argues that CMI was Crump's agent and, as such, was authorized by Crump to receive insurance applications from insureds and forward those applications to Crump.[1] First Trinity also argues that an agency agreement existed between CMI and Crump at the time of the transactions at issue.[2]

Under Mississippi agency law:

> An agency relationship may be express or de facto. A de facto agency may be proven by the presence of three elements at the time of contracting: (1) "manifestation by the alleged principal, either by words or conduct, that the alleged agent is employed as such by the principal," (2) "the agent's acceptance of the arrangement," and (3) "the parties understood that the principal will control the undertaking."
>
> . . .
> Whether an agency relationship exists is "to be determined by the relations of the parties as they exist under their agreements or acts, with the question being ultimately one of intention . . . . If relations exist which will constitute an agency, it will be an agency whether the parties understood the exact nature of the relation or not.

---

[1] Though First Trinity's Amended Consolidated Response [59] purports to jointly respond to both Canal and Crump's motions for summary judgment, First Trinity's arguments pertain almost exclusively to CMI's alleged agency relationship to Crump. Indeed, First Trinity makes no substantive arguments in support of the contention that CMI acted as Canal's agent.

[2] The document offered by First Trinity in support of this claim was actually executed by CMI and Transportation Insurance Specialists. However, First Trinity argues that Transportation Insurance Specialists is the same entity as Bisys Commercial Insurance Services, the name Crump used just prior to the time of the subject transactions.

> Moreover, the manner in which the parties designate the relationship is not controlling, and if an act done by one person in behalf of another is in its essential nature one of agency, the one is the agent of such other notwithstanding that he is not so called.

Stripling v. Guardian Entergy Exploration Co., 234 F.3d 863, 870 (5th Cir. 2000). In Insurasource, Inc v. Cowles & Connell of N.Y. Inc., another district court sitting in Mississippi considered these principles in a matter involving facts strikingly similar to the case at bar. 2011 WL 4397487, at*3 (S.D. Miss. Sept. 21, 2011).

Like First Trinity, the plaintiff in Cowles likewise engaged in the business of financing insurance premiums and executed such transactions with a similar agreement. Id. at *1. Similarly, that action arose when a third party insurance agency sought the plaintiff's premium financing services. Id. The plaintiff financed a number of premiums for policies the third party agency represented had been placed with the defendant, "a general agent for a number of insurance companies, for which it [was] authorized to bind and issue insurance policies and collect premiums." Id. As with the case at bar, when the insureds failed to make the required payments, the plaintiff attempted to cancel the policies and collect unearned premiums. Id. However, as is the case here, the defendant claimed to have never received a premium and to have never bound the policies. Id. The Plaintiff then filed suit after the defendant refused to remit the purported unearned premiums. Id. at *2.

Though the court in Cowles was tasked with evaluating the defendant's motion to dismiss for lack of personal jurisdiction rather than a motion for summary judgment, the court was forced to consider whether the third party agency was the defendant's agent for purposes of the contested transactions. Id. at *3. Based upon the aforementioned agency principles, the court found that while the third party agency was able to submit applications for insurance to the defendant, it was not authorized to accept premium payments on the defendant's behalf and there

7

was no evidence that the defendant had represented to the plaintiff that the third party agency should be treated as an agent of the defendant. Id.

According to the court, the financing agreements themselves provided no evidence that the third party agency acted on the defendant's behalf. Id. at *4. After all, "[t]he only parties other than [p]laintiff to sign the financing agreements were [the third party agency] and some of the primary insureds." Id. And, although such agreements listed the defendant as the general agent and the third party agency as an agent, "there [was] no indication in the contracts themselves that either the insurance company or the general agent were parties to the negotiation, execution, or performance of the financing agreements." Id. In the case presently before the Court, the alleged financing agreements are similarly insufficient to establish that CMI acted as Crump's agent. Although CMI is listed under "Agent Name" and Jan Gunn signed the agreements as "Agent," there is no indication that either Crump or Canal was a party to the purported financing agreements.

Additionally, "the manner in which the parties designate the relationship is not controlling." Stripling, 234 F.3d at 870. This principle holds true for the other documents submitted by First Trinity, as well – the Crump Agent Statement, which lists CMI under "Crump Agent Name," and the Crump Insured List, which lists CMI under the heading "Agency." Neither of these documents demonstrates in any way the relationship between CMI and Crump or the nature of any authority granted to CMI. As articulated in Catlin, First Trinity has still failed to adduce "proof that Crump had any involvement in the solicitation, negotiation, execution, or performance of the financing agreement, or that it 'was in control of CMI/Gunn throughout the undertaking." 2013 WL 6230099 at *6.

Also, in <u>Cowles,</u> the third party insurance agency and the defendant general agent had entered into an agreement that authorized the third party agency to submit insurance applications to the defendant and to receive a commission on policies ultimately placed with the defendant. 2011 WL 4397487, at*1. The court ultimately found that there was no agency relationship despite the presence of such an agreement. <u>Id.</u> at *4. First Trinity directs the Court to a similar document it claims is an agency agreement between Crump and CMI. First Trinity stresses that under the terms of the agreement CMI had the authority "to solicit, receive and accept applications from policy holders or potential insureds" and was required to "observe and obey all rules, regulations, instructions and directives."

However, First Trinity fails to cite the portions of the agreement that specify CMI "shall not bind [Crump] in contravention of any such rules, regulations, instructions or directives" and more importantly, that "[CMI] acknowledges it is not the agent of, and has no authority to bind [Crump] or any of its principals or insurer(s)." Thus, based upon the clear language of the agreement, it is obvious that CMI had no authority to issue policies on behalf of Crump or bind Crump by CMI's actions. As such, and in light of the court's similar findings in <u>Cowles</u>, this Court finds that First Trinity has failed to create a genuine issue of material fact as to whether CMI was the agent of Crump or Canal.

*Apparent Authority*

Alternatively, First Trinity argues that, even if CMI lacked actual authority to act on behalf of Crump, it had apparent authority such that Crump and Canal are vicariously liable for its actions. To that end, First Trinity argues it relied on prior business dealings in deciding whether to finance the subject policies. First Trinity claims that Crump routinely identified CMI as its agent in its own documents and that "Crump placed numerous policies through CMI every

9

year from 2004 to 2009." This argument has now been rejected by two other district courts sitting in Mississippi. See Catlin 2013 WL 6230099, at *6; Canal, 2014 WL 129802, at *7.

As First Trinity itself admits in its response, and as the court in Catlin recognized, when determining agency, "the manner in which the parties designate the relationship is not controlling. . . ." 2013 WL 6230099, at *5 (citing Insurasource, Inc. v. Cowles & Connell of NY, Inc., 2011 WL 4397487, at *3 (S.D. Miss. Sept. 21, 2011), aff'd, 467 Fed. Appx. 337, 338 (5th Cir. 2012). Rather, "[a]pparent authority exists when a reasonably prudent person, having knowledge of the nature and usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have." Insurasource, Inc. v. Phoenix Ins. Co., 912 F. Supp. 2d 433, 443 (S.D. Miss. 2012) (citing Mladineo v. Schmidt, 52 So. 3d 1154, 1167 (Miss.2010)).

"The following three factors must be met to recover under the theory of apparent authority: '(1) acts or conduct on the part of the principal indicating the agent's authority, (2) reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance.'" Id. Two other Mississippi district courts that have considered this precise issue have found the fact that CMI "had previously placed policies through Crump provides no indication as to the nature or extent of [CMI]'s authority." Catlin, 2013 WL 6230099, at *6. As the Court has discussed, CMI's authority to solicit applications for insurance from potential policyholders and submit them to Crump does not equate to the authority to issue policies on behalf of Crump or otherwise bind Crump by its actions. Accordingly, and in consistency with the two other Mississippi district courts that have considered this exact issue, this Court finds that First Trinity has failed to show that a genuine dispute of material fact exists with regard to CMI's apparent authority to act on behalf of Defendants.

10

*Estoppel and Ratification*

As a secondary alternative argument, First Trinity contends Defendants are liable under the doctrines of estoppel and ratification. Under Mississippi law, equitable estoppel requires:

> Conduct and acts, language or silence, amounting to a representation or concealment of material facts, with knowledge or imputed knowledge of such facts, with the intent that representation or silence, or concealment be relied upon, with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence.

Helveston v. Lum Properties Ltd., 2 So. 3d 783, 787 (Miss. Ct. App. 2009). First Trinity argues it "sent Crump a Notice of Financed Premium informing Crump that it had paid CMI on behalf of the insured the yearly premiums for [the subject policies]" but that "Crump never contacted First Trinity to inform it that it had not issued the Policies, that CMI was not its agent, or otherwise." First Trinity further argues that, when CBR failed to make the required payments, "First Trinity sent Crump a Notice of Cancellation, informing Crump that it had cancelled [the subject policies]" but that "[a]gain, Crump never contacted First Trinity to inform it that it had not issued the Policies, that CMI was not its agent, or otherwise." First Trinity argues that "Crump is now estopped to deny that CMI was its agent, or that it did not issue the Policies."

In its Complaint, First Trinity alleges, "On February 9, 2009 and May 27, 2009, First Trinity notified Crump and Canal that First Trinity *had financed* the premium payments on behalf of CBR. . . ." (emphasis added). As two other Mississippi district courts have found, "'no rational jury could conclude that [First Trinity] (the premium finance company) made premium payments to [CMI] (the independent agent) in reasonable reliance on [Canal and Crump]'s alleged silence' because it parted with the money on the day that the Notices were sent." Catlin, 2013 WL 6230099, at *7 (quoting Phoenix, 912 F.Supp.2d at 443). First Trinity, by claiming it sent the Notice of Financed Premium after it had already paid CMI, cannot prove detrimental reliance on Defendants' alleged silence. First Trinity's theory of estoppel has no merit.

11

Though First Trinity appears to conflate the doctrines of estoppel and ratification, they are distinct theories. Under Mississippi law, ratification is "the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons is given effect as if originally authorized by him." Barnes, Broom, Dallas & McLeod, PLLC v. Estate of Cappaert, 991 So. 2d 1209, 1212 (Miss. 2008). Accordingly:

> Ratification does not arise by operation of law; rather, a person ratifies an act by (a) manifesting assent that the act shall affect that person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents. It is true that, under some circumstances, a principal's inaction can result in ratification, but only where the principal has notice that others will infer from his silence that he intends to manifest his assent to the act.

Northlake Dev. L.L.C. v. BankPlus, 60 So. 3d 792, 797 (Miss. 2011) (citations omitted).

The Court notes that another Mississippi district court recently declined to grant summary judgment based upon its finding that a genuine dispute of material fact regarding ratification existed where there was significant evidence that the defendant "knew that the [independent agent] had executed [a pertinent financing agreement], or would have known but for its own deliberate ignorance." Insurasource, Inc., v. Fireman's Fund Ins. Co., 2012 WL 774934, at *6 (S.D. Miss. Mar. 8, 2012). As the court recognized in that case:

> [I]n order that there be a ratification there must be a voluntary assumption of the unauthorized act either on full information or on less than full information if undertaken deliberately in disregard of the fact that all knowledge of the transaction available has not been obtained. Green Acres Farms v. Brantley, 651 So. 2d 525, 528–29 (Miss.1995)). Unless the purported principal deliberately disregards his own ignorance of relevant facts, his lack of knowledge renders any alleged ratification invalid. Id. at 530.

Id. at *5. The court's finding in Fireman's Fund, however, is distinguishable from the case at bar.

Whereas the plaintiff in <u>Fireman's Fund</u> offered evidence that notices of financed premiums were mailed to the defendant and "that the address on the notices was the correct one," First Trinity has produced minimal evidence of the purported notices of premium financing. It has failed to offer any direct evidence that notices of premium financing were actually sent to Crump, including failing to offer copies of the actual notices. Instead, First Trinity relies on the testimony of Clarence Zahn that it was First Trinity's:

> regular practice . . . to communicate with the general agent to verify the information provided by [CMI] on the Premium Finance Agreement form prior to First Trinity deciding whether to finance the subject policy. If the decision was made to finance a given policy, then First Trinity would send a Notice of Premium Finance to the general agent.

First Trinity also cites the testimony of Gregg Zahn, First Trinity's Vice President, in support of its assertion that it sent Crump Notices of Financed Premium. However, Gregg Zahn's testimony does little to establish Crump's knowledge of the subject transactions:

> A: Our procedure would have been to contact the general agent to make sure that a policy would have been in place. That was our procedure.
>
> Q: Do you know whether that procedure was followed?
>
> A: I can't testify to that.
>
> . . .
>
> Q: Okay. All right. Do you have - - does First Trinity have any record that notices of financing relating to a Canal policy for CBR ever existed?
>
> A: I think I've answered that before. That is our normal practice to send one. I could not testify under oath whether that would be in this file or not when you're talking about thousands of documents.
>
> . . .
>
> Q: And we talked about the methods of delivery of Notices of Intent to Cancel and Notices of Cancellation, but I don't think we discussed the method of delivery that was practiced, standard practice for First Trinity with regard to notices of

13

financing. Was there a policy as to the method of delivery of notices of financing before August of 2009 by First Trinity?

A: I mean, I can't remember. I can't tell you. I mean, Clarence could easily answer that.

Whereas the Mississippi Supreme Court has held that a "[principal's] knowledge is an essential element" to ratification, this Court finds First Trinity has failed to create a genuine dispute of material fact. Brantley, 651 So. 2d at 530 ("The principal, before a ratification becomes effectual against him, must be shown to have had previous knowledge of all the facts and circumstances in the case. . . . And the principal's want of such knowledge, even if it arises from his own carelessness in inquiring or neglect in ascertaining facts, or from other causes, will render such ratification invalid."); Little, 37 F.3d at 1076 (holding that a dispute of material fact is not created by metaphysical doubt, conclusory allegations, or unsubstantiated assertions).

## CONCLUSION

Based on the foregoing reasons, the Court finds First Trinity has failed to establish a genuine issue of material fact entitling it to a trial on the merits, and as such, Defendants' Motions for Summary Judgment [52, 54] are GRANTED. This case is closed.[3] A separate order to that effect shall issue this day.

SO ORDERED on this, the 5th day of February, 2014.

/s/ Sharion Aycock  
**UNITED STATES DISTRICT JUDGE**

---

3 Crump and Canal each brought a counterclaim against First Trinity in their Answers [5, 8] to First Trinity's Complaint [3]. On February 4, 2014, the parties filed Stipulations of Dismissals [65, 66] as to each counterclaim. As such, no claims remain, and this matter is closed.